1

2

3

4

5

6

7

8                    # UNITED STATES DISTRICT COURT

9                        EASTERN DISTRICT OF CALIFORNIA

10   DON CLAYTON,                        )   1:11cv0735 LJO DLB
                                         )
11                                       )
                                         )   FINDINGS AND RECOMMENDATIONS
12                Plaintiff,             )   REGARDING PLAINTIFF'S MOTION FOR
                                         )   CLASS CERTIFICATION
13        v.                             )
                                         )   (Document 17)
14                                       )
     KNIGHT TRANSPORTATION, INC.,        )
15                                       )
                                         )
16                Defendant.             )
                                         )
17   _____)

18        On April 20, 2012, Plaintiff Don Clayton ("Plaintiff"), individually and on behalf of

19   himself and all others similarly situated, filed the instant motion for class certification.  The

20   motion was heard on June 15, 2012, before the Honorable Dennis L. Beck, United States

21   Magistrate Judge.  Michael Malk appeared on behalf of Plaintiff.  Ellen Bronchetti appeared on

22   behalf of Defendant Knight Transportation, Inc. ("Defendant" or "Knight").

23                                **BACKGROUND**

24        Plaintiff filed this class action in Tulare County Superior Court on March 8, 2011, based

25   on allegations that Defendant failed to pay its California truck drivers minimum wage for time

26   spent during orientation.  Defendant removed the action to this Court on May 6, 2011, based on

27   the Class Action Fairness Act.  28 U.S.C. § 1332(d).

28

                                          1

1   According to the Complaint, Plaintiff was employed by Defendant from August 2008

2   through December 2008 as a truck driver based in Tulare, California.  He alleges that from

3   August 2008 through the end of his employment, he was not paid minimum wage for hours

4   worked during orientation.

5   The Complaint defines the Class as:

6   All current and former truck drivers employed by Knight Transportation, Inc., who were
    based on the State of California, and who participated and/or attended an orientation
7   during the period from March 9, 2007, through the present (the "Class Period").

8   The Complaint alleges that Plaintiff and members of the Class "worked for three days in

9   connection with attending orientation" for Defendant.  Complaint, ¶ 18.  Defendant compensated

10  drivers for these three days with a flat rate of $30, and, later in the Class Period, $50.  Plaintiff

11  alleges, however, that drivers spent 19 hours over three days and therefore were not paid

12  minimum wage.  Based on these allegations, Plaintiff alleges causes of action under state law for

13  (1) Failure to pay minimum wage for time worked in orientation, Cal. Labor Code §§ 1194,

14  1194.2; (2) Failure to pay wages upon separation of employment, Cal. Labor Code §§ 201-203;

15  (3) Failure to issue accurate itemized wage statements, Cal. Labor Code §§ 226, 226.3; and (4)

16  Unfair business practices, Cal. Bus. & Prof. Code § 17200, et seq.

17  Plaintiff filed this motion to certify the class under Rule 23(a) and 23(b)(3) on April 20,

18  2012.  Defendant opposed the motion on June 1, 2012, and Plaintiff filed his reply on June 8,

19  2012.

20  **FACTUAL BACKGROUND**

21  In support of his motion, Plaintiff contends that Defendant typically conducted at least

22  one orientation per week at each of its two California locations in Tulare and Fontana.  There are

23  no differences between the orientations conducted at the two locations.  Deposition of Michael

24  Hitchcock ("Hitchcock Dep."), 11:9-12.  Although the structure of the orientation program has

25  changed during the Class Period, the length has remained consistent at three days, "give or take

26  one-half day."  Deposition of William Johnson ("Johnson Dec."), 20:10-18; Hitchcock Dep.,

27  32:12-15.

28

1    Knight requires its applicants to complete a lengthy job application, and performs a

2  background check and investigates the accuracy of the application before applicants are invited to

3  orientation.  Hitchcock Dep. 21:8-14; 55:7-55:19.  Orientation is closed to those not interested in

4  working for Knight.  Knight puts its drivers through orientation because it intends to hire them.

5  Johnson Dep. 22:6-17.  Drivers keep a log of their time at orientation, as required by the

6  Department of Transportation ("DOT") and they complete an application package, which

7  includes an IRS W-2 form, a driver's agreement, EDD paperwork and a form authorizing direct

8  deposit.  Johnson Dep., 34:24-35:9; 48:25-49:12; Hitchcock Dep., 38:8-22.  The payment for

9  attending was typically a total of $100, but it was reduced to $50 at some point during the class

10  period.  Johnson Dep., 58:16-22.[1]

11    In opposition, Defendant explains that California-based drivers are typically "based" out

12  of Tulare or Fontana, though most of them haul freight throughout the United States.  Drivers

13  based in California do not necessarily reside in California and do not frequently haul freight in

14  California.  Declaration of Timothy Pollock ("Pollock Decl."), ¶ 3-5.  Moreover, some drivers

15  based out of Fontana attended orientation in Phoenix, Arizona.  Puneet Bawa Deposition ("Bawa

16  Dep."), 27:15-19, 28:3-13.

17    Drivers must meet basic DOT requirements to drive a commercial truck, and at Knight,

18  most of these basic requirements are frequently, but not always, determined during the recruiting

19  phase of the application process.  Declaration of Danielle Phillipson ("Phillipson Decl.") at ¶¶

20  4-5.  If the applicant is not disqualified, Knight will invite the applicant to its orientation, where

21  it will determine if the drivers are actually qualified under more detailed DOT regulations.  This

22  includes DOT mandated physical examinations, drug screen, road tests, background checks and

23  employment verifications.  Hitchcock Decl., ¶ 5, Pollock Decl., ¶ 7.

24    At orientation, drivers complete the qualification procedure and Knight determines

25  whether to extend an offer of employment.  Phillipson Decl., ¶¶ 4-5.  Drivers are usually advised,

26

27  _____

28  [1] Defendant stipulated that Plaintiff did not receive *any* payment for his orientation time "due to an error." Declaration of Michael Malk, Exh. L.

1  during recruiting or orientation, that they are not hired until they satisfy all DOT requirements

2  and complete orientation.  Phillipson Dec., ¶¶ 22-23.

3      Defendant submits that orientations have changed dramatically over the proposed class

4  period.[2]  From 2007 to July 2008, Knight's orientation materials were based on the Driving

5  Associates Policies and Procedures Manual, along with any other information the local terminals

6  used.  Hitchcock Decl., ¶ 7.  Each terminal had a great deal of discretion on how to present this

7  information, including content and time spent on content.  Hitchcock Dep., 14:3-8; Hitchcock

8  Decl., ¶¶ 7-8.

9      In July 2008, Knight implemented a PowerPoint presentation for orientations at

10 California terminals.  This allowed for more consistency, though local terminals continued to

11 have discretion on how to present the materials and could add location-specific topics.

12 Hitchcock Dep., 31:1-6.

13     In May 2011, Knight incorporated the use of an internet-based orientation course, which

14 could be used in place of the classroom portion.  Applicants can use this in any location and on

15 their own time schedule, though they still need to go to the terminal for examinations and

16 screenings.  Phillipson Decl., ¶ 10.  Applicants could also decide to attend in-class orientation at

17 a terminal, where either the PowerPoint presentation or on-line material is used.  Phillipson

18 Decl., ¶ 11.

19     Defendant contends that the length of orientation has also changed over the class period,

20 as has the days on which orientation takes place.  Hitchcock Dep., 32:12-33:14, 33:21-34:15;

21 Phillipson Decl., ¶¶ 15-16, 20.  The length of sessions depends on class size, the experience of

22 attendees, class needs, availability of presenters and the presentation style.  Pollock Decl., ¶ 12;

23 Hitchcock Decl., ¶ 11; Phillipson Decl., ¶ 20.

24     Moreover, Knight frequently changes the orientation schedule to meet the needs of the

25 class, including adjusting start times and break times.  Applicants have no obligation to stay or

26

27 _____

28     [2] Defendant provides numerous declarations of prior employees/recruiters to demonstrate that the content
and amount of time spent on each topic has changed repeatedly over the class period.

1   complete orientation and Knight may dismiss them if it determines that the driver will not be

2   hired.  Phillipson Decl., ¶¶ 23-24; Johnson Dep., 25:19-26:6, 70:11-19.

3          After orientation, if the driver is hired, the driver is given a code and badge, introduced to

4   a supervisor, assigned a truck and dispatched to haul freight.  This often occurs on the same day

5   that Knight receives confirmation that the driver successfully completed all pre-hire procedures.

6   Pollock Decl., ¶ 16; Hitchcock Decl., ¶ 13; Johnson Dep., 68:1-7.

7          Knight pays travel, lodging and meal costs for applicants who do not live in California.

8   Those who are hired receive a one time payment for completing the orientation process.  Those

9   who are not hired, or who do not accept employment, do not receive this payment.  Phillipson

10  Decl., ¶ 25.  The payment appears on the drivers' first paycheck, minus taxes.  Over the class

11  period, the payment has varied from $50 to $100.  Pollock Decl., ¶ 17.

12                                      **DISCUSSION**

13         By this motion, Plaintiff seeks to certify the following Classes:

14     (A)    Orientation Pay Class:  defined as "all current and former truck drivers employed
              by Knight Transportation, Inc., who were based in the State of California, and
15            who participated and/or attended an orientation during the period from March 9,
              2007 through the present (the "Class Period")";
16
       (B)    Cal. Labor Code § 203 Class: consisting of former employees of the Orientation
17            Pay Class;

18     (C)    Cal. Labor Code § 226 Class:  consisting of members of the Orientation Pay Class
              who attended orientation within one-year before this lawsuit was filed; and
19
       (D)    Cal. Bus. & Prof. Code §17200 Class:  co-extensive with the Orientation Pay
20            Class.

21         During the hearing, Plaintiffs agreed to narrow the definition to those drivers "based in

22  the State of California, and who participated and/or attended an orientation in California" during

23  the time period at issue.

24         To qualify for class certification, Plaintiff must satisfy all of the requirements of Rule

25  23(a) of the Federal Rules of Civil Procedure and any one of the requirements of Rule 23(b).

26  Rule 23(a) requires (1) impracticability of joinder due to numerosity; (2) commonality of

27  questions of law or fact; (3) typicality of claims; and (4) adequacy of representation.

28

                                            5

1    The burden is on the party seeking to maintain the class action.  In this case, Plaintiff

2    must establish a prima facie showing of each of the elements of Rule 23(a) prerequisites and the

3    appropriate 23(b) ground for a class action.  Taylor v. Safeway Stores, Inc., 524 F.2d 263, 270

4    (10th Cir. 1975), *overruled on other grounds by* Ruckelshaus v. Sierra Club, 463 U.S. 680

5    (1983).  The burden, however, is slight.  Plaintiff need only present sufficient proof to allow the

6    court to come to a "reasonable judgment" on each requirement.  Blackie v. Barrack, 524 F.2d

7    891, 901 (9th Cir. 1975).

8    A.      23(a) Requirements

9          1.      Numerosity

10   The class must be so numerous that joinder of all members individually is

11   "impracticable."  Fed.R.Civ.P. 23(a)(1).  No specific numerical threshold is required; each case

12   must be examined.  General Tel.C. v. E.E.O.C., 446 U.S. 318, 330, 100 S.Ct. 1698 (1980).

13   Generally, 40 or more members will satisfy the numerosity requirement.  Consolidated Rail

14   Corp. v. Town of Hyde Park, 47 F.3d 473, 483 (2nd Cir. 1995).

15         Plaintiff contends that the class size of approximately 2,500 drivers is sufficiently

16   numerous.  Knight hires approximately 200 to 250 drivers for each of its two California facilities

17   per year, all of whom attend orientation in California.  Due to frequent turn-over, approximately

18   2,500 drivers have attended orientation in California since the Class Period began in March 2007.

19   Hitchcock Dep. 52:3-13; Johnson Dep. 72:4-7.

20         Defendant does not oppose numerosity.

21         2.      Commonality

22         There must be questions of law or fact common to the class.  Fed.R.Civ.P. 23(a)(2).  A

23   "common nucleus of operative facts" is usually enough to satisfy the commonality requirement.

24   Rosario v. Livaditis, 963 F.2d 1013, 1017-18 (7th Cir. 1992).

25         Plaintiff contends that commonality is satisfied because the conduct that violates

26   California law is mandated by Defendant's state-wide policies, and has therefore affected all

27   members of the putative Class.  For example, common issues include: (1) whether Plaintiff and

28   the Class were employees during the three day orientation; (2) whether Plaintiff and the Class

were entitled to be paid minimum wage for time spent at orientation; (3) whether the failure to pay minimum wages violated Labor Code section 1194; (4) whether the failure to provide former employees with all wages upon termination violated Labor Code section 203; and (5) whether Defendant's issuance of inaccurate paystubs, which showed an incorrect total amount of orientation pay, violated Labor Code sections 226 and 226.3.

The Court agrees that this action involves common questions of law, the most basic of which are whether those who attended orientation were (1) employees, and (2) entitled to minimum wage. However, a discussion of whether commonality exists also requires an examination of the three different orientations utilized over the class period.

As explained above, from 2007 to July 2008, orientation involved classroom instruction, as well as screenings and driving tests. During this period, teaching was based mainly on the Driving Associates Policies and Procedures Manual. In July 2008, to allow for more consistency, Defendant implemented a PowerPoint presentation for classroom instruction. Despite the change to PowerPoint, the orientations involved roughly the same amount of time in the classroom, and the same screenings and driving tests, as before. Therefore, during these two periods, the duration of the orientations remained consistent, as did Defendant's control over dates and schedules. The main factors that will undoubtedly be analyzed in determining whether attendees were employees were therefore consistent.

In May 2011, however, these consistencies ended for certain attendees. At that point, Defendant incorporated the use of an internet-based orientation course, which could be used in place of the classroom portion. Applicants could either (1) use the on-line course, in any location and on their own time schedule, and then go to the terminal for examinations and screenings; or (2) attend in-class orientation at a terminal, where either the PowerPoint presentation or on-line material is used. The on-line course, depending on the applicant's computer ability, takes anywhere from five to ten hours to complete and substantially reduces the time spent in the classroom. Johnson Dep., 17:18-20. After May 2011, Defendant no longer had control over applicants who chose the on-line course, in terms of when they took the course, where they took it, and how much time it involved.

Defendant attempts to defeat commonality as to all attendees by asserting that answering the question of whether attendees are employees will require "highly individualized inquiries" based on a multi-factor test.  Opposition, at 12.  Relying on Wal-Mart Stores, Inc., v. Dukes, 131 S.Ct. 2541 (2011), Defendant contends that there is no commonality, despite the existence a common question, where there are no issues capable of common answers.  Yet Defendant's contention that common answers do not exist is based on its incorrect assumption that the attendees differ so significantly that employee status cannot be determined without individual scrutiny.  As explained above, with the exception of the those choosing the on-line course after May 2011, the factual circumstances of the attendees are sufficiently common to allow for common answers.

The Court finds that commonality exists for those attending classroom orientation, but not for those who chose to substitute classroom teaching with the on-line course.  Based on the proposed class definitions, Plaintiff has failed to carry his burden of demonstrating commonality for those opting for on-line orientation.

3.    Typicality

Rule 23(a)(3) requires that "the claims or defenses of the representative parties [be] typical of the claims or defenses of the class."  In General Tele. Co. of the Southwest v. Falcon, 457 U.S. 147, 102 S.Ct. 2364 (1982), the Court noted "[t]he commonality  and typicality requirements of Rule 23(a) tend to merge." 457 U.S. at 157 n. 13, 102 S.Ct. 2364.  A named plaintiffs' claim is "typical" under Rule 23 if it arises "from the same event or practice or course of conduct that gives rise to the claims of the other class members and his or her claims are based on the same legal theory."  Ballard v. Equifax Check Services, 186 F.R.D. 589, 595 (E.D.Cal. 1999).

Plaintiff argues that his claims are typical because he, like his fellow drivers: (1) attended orientation for 3 days, (2) was not paid minimum wages for this time; (3) was not paid all wages due upon termination; and (4) received a first itemized wage statement that did not include minimum wages for having attended orientation.  Clayton Dep., 112:15-17.

1    Defendant does not oppose typicality and the Court finds that Plaintiff's claims are

2    typical of the attendees attending classroom orientations.

3         4.    Adequacy of Representation

4         The person representing the class must be able "fairly and adequately to protect the

5    interests" of all members in the class. Fed.R.Civ.P. 23(a)(4). The representation is "adequate" if

6    the attorney representing the class is qualified and competent and the class representatives are not

7    disqualified by interests antagonistic to the remainder of the class. Lerwill v. Inflight Motion

8    Pictures, Inc., 582 F.2d 597, 512 (9th Cir. 1978).

9         Plaintiff asserts that because his claims and those of the Class are "virtually coextensive,"

10   there is no legally cognizable conflict. Moreover, Defendant has stipulated that Plaintiff's

11   attorneys are adequate to serve as Class Counsel. Declaration of Michael Malk, ¶ 3.

12        Therefore, the Court finds that both Plaintiff and his attorneys are adequate to represent

13   the class.

14   B.   23(b) Requirements

15        Plaintiff requests that the Court certify the class under Rule 23(b)(3), which provides for

16   certification when:

17        (3) the court finds that the questions of law or fact common to the members of the class
          predominate over any questions affecting only individual members, and that a class action
18        is superior to other available methods for the fair and efficient adjudication of the
          controversy. The matters pertinent to the findings include: (A) the interest of members of
19        the class in individually controlling the prosecution or defense of separate actions; (B) the
          extent and nature of any litigation concerning the controversy already commenced by or
20        against members of the class; (C) the desirability or undesirability of concentrating the
          litigation of the claims in the particular forum; (D) the difficulties likely to be
21        encountered in the management of a class action.

22        1. *Commonality*

23        Common questions of law and fact predominate over individual questions, satisfying the

24   first component of the Rule 23(b)(3) inquiry, where "the issues in the class action that are subject

25   to generalized proof, and thus applicable to the class as a whole, ... predominate over those issues

26   that are subject only to individualized proof." Ortega v. J.B. Hunt Transport, Inc., 258 F.R.D.

27   361, 366 (C.D. Cal. 2009) (citing Wal-Mart Stores, Inc. v. Visa U.S.A. Inc. (In re Visa

28   Check/MasterMoney Antitrust Litig.), 280 F.3d 124, 136 (2001)). In evaluating predominance,

1    the Court looks to whether the focus of the proposed class action will be on the words and

2    conduct of the defendants rather than on the behavior of the individual class members.  Id.

3         "Considering whether 'questions of law or fact common to class members predominate'

4    begins, of course, with the elements of the underlying cause of action."  Stearns v. Ticketmaster

5    Corp., 655 F.3d 1013, 1020 (9th Cir. 2011) (citing Erica P. John Fund, Inc., v. Halliburton Co.,

6    131 S.Ct. 2179, 2184 (2011).

7         The parties argue extensively about which test the Court should ultimately apply to

8    determine whether those who attended orientation are employees.  The Court need not decide the

9    test at this point, however.  Regardless of the test used, individual issues do not predominate.

10   Defendant would have this Court believe that employment status cannot be determined on a non-

11   individualized basis, but for the reasons discussed above, common questions of law and fact

12   predominate.  In other words, for attendees attending classroom orientation, employment status

13   can be determined on a group-wide basis because the relevant facts are the same for the group.

14   Defendant exerted control over the times and places of orientation and the daily schedule, and the

15   time spent at orientation was generally consistent.[3]  Similarly, assuming attendees are employees,

16   the consistency in time spent at orientation will allow for determination of whether the

17   employees would be entitled to minimum wage.  See eg., Ortega v. J.B. Hunt Transport, 258

18   F.R.D. 361 (C.D. Cal. 2009).

19        2.    *Superiority*

20        Finally, Plaintiff contends that a class action is superior because the relatively small

21   amounts at issue for each driver make it impracticable and inefficient for each driver to file

22   individual cases.

23        Defendant opposes superiority based mainly on its argument that commonality does not

24   exist.  The Court has disposed of this argument, however, and finds that a class action is superior

25   to resolve the issues presented.

26

27   ─────────────────────

28        [3] Any slight variations in time spent at orientation can be accounted for after the class certification issues
     have been resolved.

**RECOMMENDATION**

The Court recommends that Plaintiff's Motion for Class Certification be GRANTED and that the following classes be CERTIFIED:

(A)   Orientation Pay Class: All current and former truck drivers employed by Knight Transportation, Inc., who were based in the State of California, and who participated and/or attended a classroom orientation in the State of California during the period from March 9, 2007, through the present (the "Class Period"), excluding those who participated in the on-line course in place of classroom training;

(B)   Cal. Labor Code § 203 Class: consisting of former employees of the Orientation Pay Class;

(C)   Cal. Labor Code § 226 Class:  consisting of members of the Orientation Pay Class who attended orientation within one-year before this lawsuit was filed; and

(D)   Cal. Bus. & Prof. Code §17200 Class:  co-extensive with the Orientation Pay Class.

These Findings and Recommendations are submitted to the Honorable Lawrence J. O'Neill, United States District Court Judge, pursuant to the provisions of 28 U.S.C. section 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California.  Within thirty (30) days after being served with a copy, any party may file written objections with the Court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C).  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   __July 15, 2012__          _____/s/ **Dennis L. Beck**_____
                                                              UNITED STATES MAGISTRATE JUDGE