1

2

3

4

5

6

7

8  # UNITED STATES DISTRICT COURT

9  ### EASTERN DISTRICT OF CALIFORNIA

10

11  DON CLAYTON,                              Case No.  1:11-cv-00735-SAB

12           Plaintiff,                       ORDER ON MOTION SEEKING PRELIMINARY
                                              APPROVAL OF CLASS ACTION SETTLEMENT
13       v.
                                              (ECF Nos. 70-72)
14  KNIGHT TRANSPORTATION,

15           Defendant.

16

17  ## I.

18  ## INTRODUCTION

19         On September 27, 2013, Plaintiff Don Clayton filed a motion seeking preliminary

20  approval of class action settlement.  The Court has considered the proposed settlement between

21  the parties, the proposed notice, claim and opt-out forms.  A hearing on the motion was held on

22  October 30, 2013.  Counsel Craig J. Ackermann appeared telephonically for Plaintiff and counsel

23  Ellen Bronchetti appeared telephonically for Defendant.  For the following reasons, Plaintiff's

24  motion for preliminary approval of class settlement is granted.

25  ## II.

26  ## FACTUAL AND PROCEDURAL BACKGROUND

27         Plaintiff filed this class action on behalf of himself and other similarly situated individuals

28  in Tulare County Superior Court on March 8, 2011.  (ECF No. 1-1.)  Plaintiff was seeking

1

1   declaratory relief, damages, and attorney fees for Defendant's failure to pay its California truck

2   drivers minimum wage for the time spent in mandatory orientation, failure to pay all wages upon

3   termination of employment, failure to provide accurate itemized wage statements, and unfair

4   business practices.  (Id.)  Defendant removed this action to the Eastern District of California on

5   May 6, 2011.  (ECF No. 1.)   On July 20, 2011, an order issued establishing deadlines for

6   precertification discovery and class certification.  (ECF No. 11.)  On or around August 1, 2011,

7   the parties exchanged initial disclosures pursuant to Federal Rule of Civil Procedure 26(a)(1) and

8   the parties engaged in extensive discovery.  (Decl. of Craig Ackerman ¶ 10, ECF No. 71.)

9        On March 21 and 22, 2012, Plaintiff deposed Timothy Pollock, Michael David Hitchcock,

10  Puneet Bawa, and William Johnson.  (Id. at ¶ 11.)  Defendant deposed Plaintiff on April 3, 2012.

11  (Id.)  Plaintiff filed a motion to certify the class on April 20, 2012.  (ECF No. 17.)  On July 16,

12  2012, a findings and recommendation issued recommending certifying four classes in this action.

13  (ECF No. 41.)  On August 21, 2012, United States District Judge Lawrence J. O'Neill issued an

14  order adopting the findings and recommendation and four classes were certified: 1) orientation

15  pay class; 2) California Labor Code section 203 class; 3) California Labor Code section 226 class;

16  and 4) California Business and Professions Code section 17200 class.  (ECF No. 44.)   On

17  December 3, 2013, the parties attended private meditation before JAMS Mediator Michael Loeb,

18  Esq. in San Francisco, however, the case did not settle at this time.  (Decl. of Craig Ackerman at ¶

19  13.)

20       On February 12, 2013, Plaintiff consented to the jurisdiction of the magistrate judge.

21  (ECF No. 55.)  On February 13, 2013, an order issued establishing further deadlines in this action.

22  (ECF No. 57.)  On March 21, 2013, the parties filed a stipulation requesting approval of class

23  notice, a settlement administrator and seeking an order authorizing distribution of class notice.

24  (ECF No. 58.)   The motion was granted on March 25, 2013.   (ECF No. 59.)   The parties

25  continued to investigate the claims of the class and engaged in arms-length negotiations until they

26  reached settlement in August of 2013.  (Decl. of Craig Ackerman ¶ 15.)

27       On August 13, 2013, Defendant consented to the jurisdiction of the magistrate judge.

28  (ECF No. 63.)  On August 19, 2013, the parties filed a notice informing the Court that this action

1   had settled.  (ECF No. 66.)  On September 27, 2013, the parties filed the instant motion for

2   preliminary approval of the class action settlement.  (ECF No. 70-72.)

3                                                 **III.**

4                          **TERMS OF SETTLEMENT AGREEMENT**

5          The parties have agreed to a gross settlement amount of $300,000.00, with a 40% floor of

6   distribution of the net settlement amount on behalf of the class members.  (Motion for

7   Preliminary Approval of Class Action Settlement 12,[1] ECF No. 70.)  The gross settlement amount

8   includes the class counsel fee and cost award of up to 33.33% of the gross settlement amount (not

9   to exceed $100,000.00 in fees and $12,000.00 in costs); a class representative's enhancement

10  payment (not to exceed $7,500.00); the claims administrator's fees and costs (not to exceed

11  $25,000.00 ); with the net settlement amount being $155,500.00.  (Motion for Order 13, ECF No.

12  70.)

13         A.      **Release and Waiver of Claims by Class Members**

14         The release and waiver of claims for class members provides that the class members,

15  including Plaintiff, fully and finally release and discharge Defendant from any claims based upon

16  the facts in the operative complaint, including those unknown to the class member.  (Joint

17  Stipulation of Class Action Settlement and Release ¶¶ 7.1.1 and 7.1.2, ECF No. 71-1.)  Plaintiff's

18  release provides that he releases the defendants from liability for all claims or actions of every

19  nature and description that could be asserted against Defendant.  (Id. at 7.2.1.)  Accordingly,

20  Plaintiff's release encompasses more claims than those released by the class members.

21         B.      **Payment Terms**

22         The settlement agreement provides for a gross settlement amount of $300,000.00 to be

23  paid within 15 calendar days after the effective date of the settlement.  (ECF No. 71-1 at ¶¶ 11.1,

24  11.7.)  The net settlement amount shall be calculated by deducting the class counsel fee, not to

25  exceed $100,000.00; costs not to exceed $12,000.00; the class representative enhancement

26  payment, not to exceed $7,500; and the claims administrator's fees and costs not to exceed

27  _____

28  [1] All references to pagination of specific documents pertain to those as indicated on the upper right corners via the CM/ECF electronic court docketing system.

                                                 3

1    $25,000.00 from the gross settlement amount.  (Id. at ¶ 11.1.)

2         The net settlement distribution is subject to a minimum distribution of 40%, with any

3    undistributed funds in excess of 40% remaining the property of Defendant.  (ECF No. 71-1 at ¶

4    11.3.2.)  The payment to each class representative is subject to payroll taxes, and Defendant will

5    pay the employer portion of the payroll taxes from the net settlement amount if the amount

6    claimed is less than 100% of the funds available.  (Id. at ¶ 11.3.3.)

7         Plaintiff, as the class representative, shall receive his portion of the class settlement

8    payment as well as an enhancement payment of $7,500.00.  (Id. at ¶ 11.4.)  Any funds remaining

9    in the settlement fund that are uncollected 150 calendar days after the effective date shall be

10   returned to Defendant.  (Id. at ¶ 11.7.)

11        Within forty-five days after the notice is mailed, the class members will be required to

12   accurately complete and sign a claim form.  (Id. at ¶ 9.2.2.)  Claims will be rejected by the claims

13   administrator if the class member failed to sign or completely fill out the form or submits the

14   claim after the claim deadline has passed.  (Id. at ¶ 9.3.)  The payment to each class member shall

15   be their proportionate share of the net amount which is expected to total at least $72.00.  An

16   allegation that the class member did not receive the notice packet will not be cause for the claims

17   administrator to accept a late claim form.  (Id. at ¶ 11.3.1; ECF No. 70 at 13.)

18        To be valid the claim form must include the last four digits of the class member's Social

19   Security Number, the form must be signed by the class member, and the name and last four digits

20   of the Social Security Number must match Defendant's records provided to the claims

21   administrator.  (ECF No. 71-1 at ¶ 9.4.)  Any checks to class members that are not cancelled

22   within ninety calendar days will be deemed void and turned over to the State Controller's office

23   pursuant to California Code of Civil Procedure section 1150, et seq.  (Id. at ¶ 9.7.)

24        **C.    Stipulated Term**

25        During the October 30, 2013 hearing, the Court expressed concern regarding the term that

26   uncashed checks made out to class members would return to Defendant should the claims exceed

27   40% of the net settlement account.  These checks would be issued in response to a class member

28   filing a claim.  The Court was concerned with the fairness of depriving the class member of their

4

1  portion of the settlement due to the failure to timely cash a check when they had filed a claim.

2  Due to the concerns expressed by the Court, the parties stipulated during the hearing to

3  revise the term of the settlement agreement and any uncashed checks will escheat to the State.

4  **D.    Objection and Opt-Out Procedures**

5  Class members shall have the opportunity to object to or opt-out of the settlement.  Within

6  forty-five days from the date the notice of settlement is filed, the class members may object in

7  writing to the terms of the settlement.  (ECF No. 71-1 at ¶ 8.4.1.)  Class members who fail to

8  submit timely written objections will be deemed to have waived any objections to the settlement.

9  (Id. at ¶ 8.4.3.)

10  Class members may exclude themselves from the settlement by submitting a request for

11  exclusion within forty-five calendar days from the mailing of the notice of settlement.  (Id. at ¶

12  8.5.1.)

13  **IV.**

14  **LEGAL STANDARD**

15  Federal Rule of Civil Procedure 23(e)(2) requires that any settlement in a class action be

16  approved by the court which must find that the settlement is fair, reasonable, and adequate.  The

17  role of the district court in evaluating the fairness of the settlement is not to assess the individual

18  components, but to assess the settlement as a whole.  Lane v. Facebook, Inc., 696 F.3d 811, 818-

19  19 (9th Cir. 2012) reh'g denied 709 F.3d 791 (9th Cir. 2013).  The class representatives have an

20  incentive to advance their own interests over that of the class and class counsel owes the ultimate

21  fiduciary responsibility to the class as a whole and are not bound by the views of the named

22  plaintiffs regarding settlement.   Staton v. Boeing Co., 327 F.3d 938, 959-60 (9th Cir. 2003).

23  Therefore, in assessing the fairness of the settlement, the court is to ensure that "the agreement is

24  not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that

25  the settlement, taken as a whole, is fair, reasonable and adequate to all concerned."   Hanlon v.

26  Chrysler Corp., 150 F.3d 1011, 1027 (9th Cir. 1998) (quoting Officers for Justice v. Civil Serv.

27  Comm'n of San Francisco, 688 F.2d 615, 625 (9th Cir. 1982)).

28  The court considers a number of factors in making the fairness determination including:

1  "the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further

2  litigation; the risk of maintaining class action status throughout the trial; the amount offered in

3  settlement; the extent of discovery completed and the stage of the proceedings; the experience

4  and views of counsel; the presence of a governmental participant;[2] and the reaction of the class

5  members to the proposed settlement." Lane, 696 F.3d at 819 (quoting Hanlon, 150 F.3d at 1026).

6                                               **V.**

7                                        **DISCUSSION**

8        The Court has previously certified the classes in this action.  (ECF No. 44.)  The Rule

9  23(a) requirements of numerosity, commonality, typicality, and adequacy of representation and

10 Rule 23(b) requirements of commonality and superiority have been met and are still present.  The

11 settlement class is defined as "all current and former truck drivers employed by Defendant who

12 were based in the State of California and who participated and/or attended Defendant's

13 orientation in the State of California from March 9, 2007 through the date upon which the Court

14 grants this Preliminary Approval Order, excluding those who participated in the online training

15 course in place of classroom training and those who opted out of the non-settlement certified

16 class.  The Class Members consists of those drivers who attended and completed Knight's

17 orientation and who were ultimately hired by Defendant."  (ECF No. 71-1 at ¶ 1.4.)  The class

18 remains intact for the purposes of settlement.

19       The Court confirms appointment of Craig Ackermann of Ackermann & Tilajef, P.C. and

20 Michael Malk of The Malk Law Firm as Class Counsel, and Don Clayton as Class

21 Representative.

22       **A.      The Strength of Plaintiffs' Case**

23       In this action, Plaintiff asserts that Defendant failed to pay class members minimum

24 wages for a mandatory pre-employment orientation and additional derivative claims.   In

25 Plaintiff's case, he attended three days of orientation and was not paid minimum wages for the

26 hours attended.  He alleges that because he was not paid these wages he was not provided with an

27 _____

28 [2] Since there is no government participant in this action, this factor does not weigh in the Court's analysis.

accurate wage statement, and when he was terminated he was not paid all wages due to him. (ECF No. 70 at 10.)  Defendant contends that, since the class members were not employees at the time that they attended orientation, the time qualifies as pre-employment training under California law.  Defendant asserts that the employees were not entitled to minimum wage compensation for this pre-employment orientation.

While the issue of preemployment training has been address by courts, the question of how it applies to truck drivers has not been addressed by California courts or the federal court. Since this is a novel issue, there is a risk that Defendant would prevail in the asserted defense. Accordingly, this factor weighs in favor of preliminary approval of the class settlement.

**B.      The Risk, Expense, Complexity, and Likely Duration of Further Litigation**

While the parties vigorously disagree regarding Defendant's liability for unpaid wages, Defendant agreed to resolve this action to avoid incurring substantial costs.  If this action does not settle, it will require the parties to spend additional time and incur the costs of proceeding to trial on the merits.  The settlement of this action results in a benefit to the class members without the additional costs and risks associated with proceeding to a trial on the class members' claims.

In this action, Defendant had a policy of paying drivers a $50.00 bonus upon completion of the orientation training.  According to the motion to approve the settlement, the most that individual drivers would be owed would be $142.00 in unpaid wages.  (ECF No. 70 at 19 n.2.) Under the proposed settlement, class members would be receiving approximately fifty percent of the amount of unpaid overtime to which they would be entitled should they prevail at trial.

The settlement of this action will result in immediate recovery for the class and, given the risk of the class not receiving any recovery in this action, this factor weighs in favor of preliminary approval of the class settlement.

**C.      The Risk of Maintaining Class Action Status Throughout the Trial**

The class in this action has been certified and there is no foreseeable risk of maintaining class action status throughout the trial of this action.  This factor does not weigh for or against preliminary approval of the class settlement.

///

7

**D.      The Amount Offered in Settlement**

"The very essence of a settlement is compromise, 'a yielding of absolutes and an abandoning of highest hopes.' "  Officers for Justice, 688 F.2d at 624 (citations omitted).  The district court cannot rewrite the settlement agreement and may not delete, modify, or substitute certain provisions.  Id. at 630.  The Court is cognizant that it is to assess the settlement as a whole and not the individual provisions.  Lane, 696 F.3d at 818-19.

The parties have agreed to settle the case for $300,000.00.  The class in this action consists of approximately 2,139 members.  (Ackermann Decl. ¶ 19, ECF No. 71.)  If Plaintiff were to prevail on his theory, the highest amount of unpaid wages to which the class would be entitled is $303,738.00; and statutory damages would be $106,950.00.[3]

The Court finds that the amount offered in settlement, which is equivalent to the damages on the class's first cause of action, supports the approval of the settlement agreement.

**E.      The Extent of Discovery Completed and the Stage of the Proceedings**

The parties have been litigating this action since 2011.  According to Plaintiff, in the course of the litigation the parties,

> exchanged Initial Disclosures and engaged in extensive discovery, including written discovery and requests for production of documents.  Defendant also produced a substantial number of documentation.  Plaintiff was deposed for a full day on April 3, 2012 and Plaintiff took the depositions of four of Defendant's employees, including its designated corporate representatives pursuant to Federal Rule of Civil Procedure 30(b)(6).  [Citation omitted.]  Additional discovery also took place after the Parties attended mediation.

(ECF No. 70 at 11:11-16.)

Plaintiff contends that "Class Counsel has carefully reviewed and analyzed thousands of pages of records received from Defendant, including, but not limited to the documents and policies and procedures referenced above."  (Id. at 11.)  Based upon the information and discovery obtained during litigation, documents and information were scrutinized and analyzed to determine Defendant's liability and amounts due in damages.  (Id.)  Accordingly, the

---

[3] Unpaid wages are calculated at $142.00 x 2,139 members = $303,738.00.  Statutory damages would be calculated at $50.00 x 2,139 members = $106,950.00.

1   investigation and discovery conducted in this action supports the approval of the settlement

2   agreement.

3       **F.      The Experience and Views of Counsel**

4       Counsel for both parties to this action are particularly experienced in employment law and

5   wage and hour class actions involving the trucking industry.  (ECF No. 70 at 18.)  Class counsel

6   has experience in negotiating class action settlement for wage and hour violations in the trucking

7   industry.  (Id.)  "In light of the facts revealed during discovery, both Parties' positions, the

8   complexities of the case, the uncertainties of litigation, and the interests of a fair result for the

9   members of the Settlement Class, and available information about comparable settlements,

10  Counsel on both sides share the view that this Settlement is a fair and reasonable settlement."

11  (Id.)  These opinions of counsel, experienced in matters such as that at issue here, are entitled to

12  significant weight and support the approval of the settlement agreement.

13      **G.      The Reaction of the Class Members to the Proposed Settlement."**

14      Plaintiff has agreed to the terms of the settlement agreement.   However, the class

15  members have not yet received notice, so this factor shall be revisited following the fairness

16  hearing for final approval of the settlement.

17      **H.      Attorney Fees**

18      Class counsel is requesting a fee under the common fund method of 33 1/3%, not to

19  exceed $100,000. (ECF No. 70 at 21-22.)   In    determining    whether    the    settlement    is

20  fundamentally fair, adequate and reasonable as required by Rule 23(e), the court must carefully

21  assess the reasonableness of the attorney fees that are proposed under the settlement agreement.

22  Staton v. Boeing Co., 327 F.3d 938, 963 (9th Cir. 2003).  "If fees are unreasonably high, the

23  likelihood is that the defendant obtained an economically beneficial concession with regard to the

24  merits provisions, in the form of lower monetary payments to class members or less injunctive

25  relief for the class than could otherwise have obtained."  Staton, 327 F.3d at 963.

26      The court is required to carefully scrutinize the fee agreement even when there has been

27  no objection to it because the court assumes the role of fiduciary for the class plaintiffs.  Staton,

28  327 F.3d at 970.  In Staton, the Ninth Circuit held that:

in a class action involving both a statutory fee-shifting provision and an actual or putative common fund, the parties may negotiate and settle the amount of statutory fees along with the merits of the case, as permitted by Evans. In the course of judicial review, the amount of such attorneys' fees can be approved if they meet the reasonableness standard when measured against statutory fee principles. Alternatively, the parties may negotiate and agree to the value of a common fund (which will ordinarily include an amount representing an estimated hypothetical award of statutory fees) and provide that, subsequently, class counsel will apply to the court for an award from the fund, using common fund fee principles. In those circumstances, the agreement as a whole does not stand or fall on the amount of fees. Instead, after the court determines the reasonable amount of attorneys' fees, all the remaining value of the fund belongs to the class rather than reverting to the defendant.

Id. at 972.

In the Ninth Circuit, courts typically calculate 25% of the common fund as the "benchmark" for a reasonable fee award providing adequate explanation in the record for any special circumstances that justify departure.   In re Bluetooth Headset Products Liability Litigation, 654 F.3d 935, 942 (9th Cir. 2011).  The usual range for common fund attorney fees are between 20-30%.  Vizcaino v. Microsoft Corp., 290 F.3d 1043, 1047 (9th Cir. 2002).  The Court may use the lodestar method to cross check the reasonableness of the percentage award. Vizcaino, 290 F.3d at 1050.  Under the lodestar method, the court will first determine the appropriate hourly rate for the work performed, and that amount is then multiplied by the number of hours properly expended in performing the work.  Antoninetti v. Chipotle Mexican Grill, Inc., 643 F.3d 1165, 1176 (9th Cir. 2010).  This amount may be increased or decreased by a multiplier that reflects factors not considered in the calculations, such as, "the quality of representation, the benefit obtained for the class, the complexity and novelty of the issues presented, and the risk of nonpayment[.]"  In re Bluetooth, 654 F.3d at 942.

1.      Quality of the representation

Plaintiff argues that class counsel's skill and experience in litigating wage and hour actions further supports the uncontested fee award.  Plaintiff contends that class counsel's experience in litigating similar matters was integral in evaluating the strengths and weaknesses of Plaintiff's case.

This action was filed on May 6, 2011; and the parties litigated the action from July of 2011 through the settlement in August 2013.  The parties conducted discovery.  Plaintiff deposed

four of Defendant's employees and reviewed relevant documents.  The parties participated in a single day of formal mediation.  Other than the motion to certify the class, there were no contested motions filed in this action.  While the Court finds that class counsel is experienced in wage and hour cases, the circumstances here do not support a finding that this action required exceptional skill.  This factor does not support an increase from the 25% benchmark.

       2.     Benefit Obtained for the class

Class counsel obtained a settlement of $300,000.00 for the class.  Plaintiff asserts that this is a substantial recovery and class counsel received exceptional results.  The class members in this action are anticipated to recover less than 50% of the their potential recovery.  Since there was a risk involved, including the risk of no recovery, the Court finds that this is a good result.  However, the circumstances here do not lead the Court to conclude that the result is exceptional.

Additionally, the recovery in this class action is subject to only 40% of the net settlement fund being distributed to the class with the remaining undistributed funds reverting to the defendant.  Therefore, depending upon the number of class members who file claims, the class may only recover $62,000.  In this instance, the attorney fees are approximately 40% more than what the class may ultimately recover.  Where the total fees sought are significantly more than the total recovered by class members, the fees may not be "fair and reasonable."  Parkinson v. Hyundai Motor America, 796 F.Supp.2d 1160, 1170 (C.D. Cal. 2010).

       3.     Complexity and novelty of the issues presented

Class counsel argues that the instant wage and hour issues surrounding orientation pay are a developing area of case law with conflicting authorities.  However, there is nothing in the record to show that the issues addressed in this action are complex.  While the law regarding preemployment training has not been applied to claims for truck drivers, the area of law has been developed and opinions set forth the specific criteria governing the claims.  Accordingly, this factor does not support an increase from the 25% benchmark.

       4.     Risk of nonpayment

Class counsel states that they bore the entire risk of and cost of this action on a contingency basis and these risks are substantial because of the great expenditure of attorney time

1    with an uncertain outcome.  The contingent nature of the fee is an important factor in determining

2    the fee award and may justify awarding a premium over the attorney's normal hourly rate.

3    Monterrubio v. Best Buy Stores, L.P., __ F.R.D. __, 2013 WL 2106085, at *14 (E.D. Cal. May

4    14, 2013).  However, the risks associated with this case are no greater than that associated with

5    any other wage and hour action and no extraordinary circumstances exist that would support an

6    increase from the 25% benchmark.

7            5.        Awards in Similar Cases

8            Plaintiff cites to similar cases in which the court awarded 33% of the common fund as

9    attorney's fees.  However, a review of these cases reveals that they are not similar to this action.

10           In re Pacific Enterprises Securities Litigation, 47 F.3d 373 (9th Cir. 1995), was not a wage

11   and hour action, but involved a securities class action lawsuit and derivative class action lawsuit.

12   Id. at 375.  In Garcia v. Gordon Trucking, Inc., No. 1:10-cv-0324-AWI-SKO, 2012 WL 5364575

13   (E.D. Cal. Oct. 31, 2012), while the case was pending, the California Supreme Court issued a

14   ruling that posed obstacles to certification of a significant number of plaintiff's claims.  Id. at *5.

15   After Plaintiffs filed a motion for summary judgment, the class settled for $3.7 million and each

16   class member received a pre-tax recovery of $1,626.00.  Id. at *5-6.  The parties participated in

17   sixteen depositions and class counsel conducted informal interviews with dozens of class

18   members and obtained twenty signed statements by class members to support the plaintiff's

19   claims.  Id. at *6.

20           In Singer v. Becton Dickinson and Co., No. 08-cv-0821-IEG (BLM), 2010 WL 2196104

21   (S.D. Cal. June 1, 2010), the class recovery was $1,000,000.00 and the recovery was 110% of

22   actual wages owed to one of the classes and 26% recovery for another class whose meal and rest

23   period claims were uncertain due to whether the premiums sought were wages or penalties.  Id. at

24   *2, 4-5.  Due to the litigation, defendants conducted an in-depth review of all wage statements

25   and payroll records and implemented auditing tools and training efforts to ensure compliance with

26   California law.  Id. at *5.  Further, awards in the Central District are in the 20% to 50% range,

27   which is above those awarded in this district.  Id. at *8.

28           In Vasquez v Coast Valley Roofing, 266 F.R.D. 482 (E.D. Cal. 2010), plaintiffs' claims

1    involved rest and meal period premiums and the California Supreme Court was reviewing the

2    applicable standards causing a significant risk of no recovery.  Id. at 489.  The class recovery was

3    $300,000 which resulted in at least $2,600.00 for each claimant.  Id.  Class counsel conducted

4    significant discovery which involved tens of thousands of pages, and took in-depth interviews of

5    numerous class members.  Id.  The class itself required counsel to find and contact largely

6    Spanish speaking workers and navigate challenging issues of proof due to defendant's limited

7    record keeping.  Id. at 492.

8        Finally, in Romero v. Producers Dairy Foods, Inc., No. 1:05-cv-0484-DLB, 2007 WL

9    3492841 (E.D. Cal. Nov. 14, 2007), plaintiff's counsel negotiated an award of $240,000 as well

10   as changes to defendants employment policies and practices.  Id. at *1, 3.  During the course of

11   the action, class counsel spent 933.83 hours litigating the action which translated to fees of

12   approximately $257,500.00.  Id. at *3.  The court award 33% of the recovery for a total award of

13   $80,000.00.  Id.  In this instance, counsel only received approximately 31% of their lodestar.  The

14   case contained complex legal issues regarding whether the plaintiff's claims for overtime

15   compensation were barred by a Motor Carrier exception to the Fair Labor Standards Act.  Id. at

16   *3.

17       This case is distinguishable from those awarding a higher percentage for attorney fees.

18   The average class member is expected to receive approximately $72.00.  While Plaintiff claims

19   the issues were complex, the claims in this action did not involve any case pending before the

20   California Supreme Court or any other court that could drastically change the outcome once this

21   case is decided.  There is no evidence before the Court to show that the claims here are cutting

22   edge legal issues.  The parties conducted five depositions and engaged in a single day of formal

23   mediation that did not result in settlement.

24       6.    Lode Star Comparison

25       Class counsel has submitted a declaration that they have spent 185.45 attorney and

26   paralegal hours on this action and anticipate spending 40 additional hours through final approval

27   of the settlement.  (Decl. of Craig Ackerman ¶ 34.)  Calculating the hours spent by the agreed

28   upon percentage, class counsel is requesting approximately $444.00 per hour for attorney and

13

1  paralegal work.

2          Class counsel cites cases to support his request as reasonable.  However, in Barrios v.

3  Diamond Contract Services, Inc., 461 Fed.Appx. 571, 2011 WL 6168403 (9th Cir. Dec 13, 2011),

4  while the appellate court held the that district court erred by failing to award attorney fees, it did

5  not address the rate requested.  Id. at 572.  Further, in Bond v. Ferguson Enterprises, Inc., 2011

6  WL 2648879 (E.D. Cal. June 30, 2011), the court found that the fees counsel requested were

7  higher than normally permitted under federal law.  Id. at *12.

8          Additionally, many cases in the Eastern district find that prevailing hourly rates for

9  attorneys are in the $400/hour range.  Monterrubio v. Best Buy Stores, L.P., __ F.R.D. __, 2013

10  WL 2106085, at *18 (E.D. Cal. May 14, 2013) (collecting cases).  Rates for paralegals in the

11  Eastern District range from $75.00 to 100.00 per hour.  Id.  While Plaintiff contends that, based

12  upon the lodestar rate, the fees in this action to date total $122,720.50, counsel did not provide a

13  breakdown for the Court to calculate such fees, and based upon the information provided,

14  counsel's rate is not within the prevailing range in this district.[4]  Based upon the information

15  before the Court, the award of attorney fees at 33 1/3% is not reasonable.

16          7.     Conclusion

17          In light of the factors discussed above, the Court finds that there are not circumstances in

18  this action justifying an award of 33 1/3% in this action.  This action was litigated for

19  approximately two years.  There is no evidence that this case involved extremely complex or

20  risky issues or that the results achieved in the litigation were extraordinary.  Further, the lodestar

21  analysis does not support an award of 33.3%.  Accordingly, the Court finds no exceptional

22  circumstances to justify an upward adjustment in the lodestar and recommends that the attorney

23  fee in this class action be set at 25%.  However, the Court may revisit this matter at the final

24  fairness hearing.

25          I.      Other Provisions of Concern to the Court

26          In this instance, the parties have agreed to settle the case for $300,000.00.  The class in

27  _____

[4] At the October 30, 2013 hearing, Plaintiff's counsel noted that the fees are calculated based upon rates in the
28  Central District which are higher than those in the Eastern District.

14

1    this action consists of approximately 2,139 members.  (Ackermann Decl. ¶ 19, ECF No. .)  Each

2    participating class member will receive at least $72.00, reduced by the employee's portion of

3    payroll taxes.  (ECF No. 70 at 13.)  Plaintiff contends that this is reasonable in relation to other

4    similar actions which have been settled and provide for far less compensation than each class

5    member will receive in this instance.  (ECF No. 70 at 22.)

6        The Court discusses two areas of concern in the settlement in this action: 1) the class

7    representative's "enhancement payment" of $7,500.00; and 2) the provision that only 40% of the

8    net proceeds are required to be distributed to the class plaintiffs.

9        1.    Incentive Award

10       Incentive awards, which the proposed settlement refers to as enhancement pay, "are

11   payments to class representatives for their service to the class in bringing the lawsuit."  Radcliffe

12   v. Experian Information Solutions Inc., 715 F.3d 1157, 1163 (9th Cir. 2013).  These awards come

13   out of the class's recovery in instances where the class receives a monetary settlement.  Radcliffe,

14   715 F.3d at 1163.  While the court may approve incentive awards, the Ninth Circuit has advised

15   district courts to carefully scrutinize the awards to ensure they do not undermine the adequacy of

16   the class representatives.  Radcliffe, 715 F.3d at 1163.

17       In Staton, the Ninth Circuit found it was an abuse of discretion to approve a settlement

18   where the class representatives received an incentive award that was, on average sixteen times

19   greater than the award that the unnamed class members would receive.  327 F.3d at 946.  The

20   district court must evaluate the fairness of the incentive award by considering "relevant factors

21   includ[ing] the actions the plaintiff has taken to protect the interests of the class, the degree to

22   which the class has benefitted from those actions, ... the amount of time and effort the plaintiff

23   expended in pursuing the litigation ... and reasonabl[e] fear[s of] workplace retaliation."  Id. at

24   977 (quoting Cook v. Niedert, 142 F.3d 1004, 1016 (7th Cir. 1998)).

25       Plaintiff argues that the proposed payment of $7,500.00 is intended to recognize his

26   substantial initiative and significant efforts on behalf of the settlement class.  Plaintiff assisted

27   class counsel in this action, attended a full day deposition, communicated with class counsel, and

28   furnished background information regarding his claims.  Plaintiff also argues that the proposed

15

1  payment recognizes the risk he took of being personally liable for all costs incurred, facing

2  intrusive discovery, and the disclosure to potential employers that he sued a former employer.

3  (ECF No. 70 at 20.)

4      Courts have found enhancement payment of $7,500.00 to be reasonable.  See Rodriguez v.

5  D.M. Camp & Sons, No. 1:09-cv-00700-AWI-JLT, 2013 WL 2146927, at *3, 18 (E.D. Cal. May

6  15, 2013) (reducing incentive award to $7,500.00 for class representatives where action settled

7  for $675,000, and average class member would receive $2,204.68); Gong-Chun v. Aetna Inc., No.

8  2012 WL 2872788, at *15, 25 (E.D. Cal. July 12, 2012) (approving $7,500.00 for one class

9  representative and $2,000.00 award for 2 other representatives where action settled for

10  $700,000.00);  Alvarado v. Nederend, No. 1:08-v-01099-OWW-DLB, 2011 WL 90228, at *2,

11  (E.D. Cal. Jan. 11, 2011) (approving $7,500.00 incentive award where action settled for

12  $505,058.60 and average class member would receive $2,000.00); Bond v. Ferguson Enterprises,

13  Inc., No. , 2011 WL 2648879, at *2, 8 (E.D. Cal. June 30, 2011) (approving $7,500.00 incentive

14  award in action that settled for $2,250,000.00 with average settlement share of $2,776.34 per

15  employee).

16      In bringing this action, Plaintiff participated in several lengthy interviews and phone

17  conferences;  produced  a  significant  number  of  relevant  documents;  reviewed  pleadings,

18  documents, and data provided by Defendant; communicated about the case with class members;

19  kept in contact with his attorneys; and was deposed.  (Decl. of Don Clayton ¶ 6, ECF No. 72.)

20      In this instance, Plaintiff would receive $7,500.00 for his participation in the litigation

21  compared to the unnamed class members who will only receive $72.00.  This action was litigated

22  for a period of just over two years.  While Plaintiff's assistance did result in this action settling

23  and the class members will benefit from his participation, there is no evidence that Plaintiff sent

24  more time assisting counsel than would occur in an average case.  Finally, since Plaintiff's

25  employment with Defendant terminated prior to his bringing this action, there was no fear of

26  workplace retaliation in bringing this suit.  However, the Court does take note of the possibility

27  that the fact Plaintiff sued his former employer could negatively affect his job prospects in the

28  future.

1     In similar cases, courts have found awards in the range of $2-3,000.00 appropriate to

2    compensate the class representative for his participation.  See Monterrubio, 2013 WL 2106085, at

3    *21 (awarding class representative $2,500.00 where action settled for $400,000.00 and each class

4    member will receive $65.79); Wolph v. Acer America Corporation, No. C 09-01314 JSW, 2013

5    WL 5718440, at *6 (N.D. Cal. Oct. 21, 2013) (reducing incentive award to $2,000.00 where

6    named representatives did not demonstrate any great risk to either finances or reputation in

7    bringing the class action); Rigo v. Kason Industries, Inc., No. 11-cv-64-MMA(DHB), 2013 WL

8    3761400, at *8 (S.D. Cal. July 16, 2013) (finding $2,500.00 incentive award for more than two

9    years of service well within the acceptable range).

10    While Plaintiff argued that he is releasing his claims to other class actions which are

11   proceeding against Defendant, such as meal and break period claims, the Court notes that Plaintiff

12   was only employed by Defendant from August 2008 through December 2008.  Since Plaintiff was

13   only employed by Defendant for four months, the release of these wage claims would not result in

14   a loss of substantial damages.  The Court finds that Plaintiff is entitled to an incentive award for

15   his efforts on behalf of the class members, however, given the large disproportion of the incentive

16   award to the recovery of the unnamed class members, a downward adjustment of the award is

17   warranted.  The Court agrees with counsel's argument that providing minimal incentive payments

18   in actions such as this where the damages are small would discourage litigants from pursuing

19   violations.  Giving consideration to the relevant factors, the Court finds an incentive award to

20   Plaintiff of $3,500.00 for his efforts in this action is appropriate.

21         2.      Distribution of Unclaimed Funds

22    Additionally, the Court considers that according to the settlement agreement, Defendants

23   are only required to distribute 40% of the net settlement proceeds.  Therefore, depending upon the

24   number of class members who file claims, the class as a whole may only recover $62,000.  The

25   Court was concerned that the attorney fees as initially proposed were approximately 40% more

26   than what the class could ultimately recover.  Where the total fees sought are significantly more

27   than the total recovered by class members, the fees may not be "fair and reasonable."  Parkinson

28   v. Hyundai Motor America, 796 F.Supp.2d 1160, 1170 (C.D. Cal. 2010).

1    The parties have agreed that 40% of any unclaimed net settlement amount will remain the

2    property of Defendant.   The distribution of unclaimed funds may be by cy pres or fluid

3    distribution, escheat to the government, reversion to the defendants, or pro rata distribution to

4    located class members.  Six (6) Mexican Workers v. Arizona Citrus Growers, 904 F.2d 1301,

5    1306 (9th Cir. 1990).  The distribution of unclaimed funds should be guided by the objections of

6    the underlying statute and the interests of the silent class members.  Six (6) Mexican Workers,

7    904 F.2d at 1306.

8        The Court's main concern here was that Defendant would only be required to distribute

9    40% of the net settlement amount.  As initially proposed, this could result in a recovery to the

10   class of $62,000.00 with class counsel receiving $100,000.00.  However, with the modifications

11   to the attorney fees and class representative incentive payment, 40% of the net settlement amount

12   would be $74,200.00.  When considering this in relation to the attorney fees of $75,000.00, the

13   Court finds this is a fair distribution of funds.

14       **J.     Notice Requirements of Rule 23(c)(2)(B)**

15       For absent class members to be bound by the agreement, class members must adequately

16   represent the absent class members at all times, and the absent class members must be provided

17   with notice, an opportunity to be heard, and a right to opt out of the class.  AT&T Mobility LLC

18   v. Concepcion, 131 S.Ct. 1740, 1752 (2011).  Federal Rule of Civil Procedure 23(e)(1) requires

19   that the court "direct notice in a reasonable manner to all class members who would be bound by

20   the proposal."  Where, as here, the class has been certified under Rule 23(b)(3), the notice must

21   meet the requirements of Rule 23(c)(2)(B).

22       "Adequate notice is critical to court approval of a class action settlement under Rule

23   23(c)(2)(B).  Thus, both the content of the notice and the form of the notice must be adequate and

24   approved by the Court."  Monterrubio, 2013 WL 2106085 at *7 (internal citations omitted).

25       Rule 23(c)(2)(B) requires the court to "direct to class members the best notice that is

26   practicable under the circumstances, including individual notice to all members who can be

27   identified through reasonable effort."  However, this does not require actual notice and notice by

28   mail is sufficient if it is reasonably calculated to apprise the interested parties of the pendency of

18

1    the action and affords them an opportunity to object.  <u>Monterrubio</u>, 2013 WL at *8 (citing

2    <u>Mullane v. Cent. Hanover Bank & Trust Co.</u>, 339 U.S. 306, 314 (1950)).

3           Here, the parties have selected a neutral third party claims administrator, CPT Group, Inc.

4    ("CPT"), to administer the settlement.  (ECF No. 70 at 25.)  CPT has provided prior notice to the

5    unnamed class members in this action.  (<u>Id.</u> at 26.)  Prior to mailing the notices, CPT will update

6    the most current mailing address information for class members using the United States Postal

7    Service National Change of Address List.  (<u>Id.</u> at 25.)   If any notice packets are returned

8    undelivered prior to the claims submission deadline, the notices will be sent to the forwarding

9    address.  (<u>Id.</u> at 25-26.)  If no forwarding address is provided, CPT will attempt to determine the

10   individual's correct address by using the social security number of the individual.  (<u>Id.</u> at 26.)

11          While the proposed notice to the parties will need to be modified to comply with this

12   order, it adequately meets the requirements of Rule 23(c)(2)(B).  The notice states the nature of

13   the action, gives the definition of the class certified, and sets forth the claims, issues and defenses.

14   (Notice of Proposed Class Settlement and Final Fairness and Approval Hearing 3, ECF No. 71-2.)

15   The notice explains the terms of the settlement including the distribution to the members of the

16   class and those claims that are released.  (<u>Id.</u> at 4, 7.)  The notice informs the class members that

17   they may request exclusion and of the time and manner to make such a request.  (<u>Id.</u> at 5.)  Class

18   members are informed that they may object and appear at the hearing.  (<u>Id.</u> at 6.)  The class

19   members are informed of the binding effect of a class judgment on members under Rule 23(c)(3).

20   (<u>Id.</u> at 5.)

21          Finally, the agreement complies with the requirements of 28 U.S.C. § 1715(b), which

22   requires "[n]ot later than 10 days after a proposed settlement of a class action is filed in court,

23   each defendant that is participating in the proposed settlement shall serve upon the appropriate

24   State official of each State in which a class member resides and the appropriate Federal official, a

25   notice of the proposed settlement. . . ."  (Joint Stipulation of Class Action Settlement and Release

26   ¶ 15.16, ECF No. 71-1.)

27          This system for providing notice is the best practicable means under the circumstances

28   and is reasonably calculated to provide notice to all class members.  <u>Monterrubio</u>, 2013 WL

1  2106085, at *8.

2  **VI.**

3  **CONCLUSION AND ORDER**

4  Based on the foregoing, IT IS HEREBY ORDERED that:

5      1.    Plaintiff's motion for a preliminary approval of the class action settlement is

6          GRANTED;

7      2.    CPT Group, Inc. is appointed as claims administrator for this settlement pursuant

8          to the terms set forth in the settlement agreement;

9      3.    The proposed notice and claim form are approved subject to the modifications

10         ordered herein, specifically;

11         a.    Class representative Don Clayton is awarded three thousand five hundred

12             dollars ($3,500.00) as an incentive award; and

13         b.    Class counsel is awarded 25% of the total settlement as attorney fees;

14     4.    The following dates shall govern for purposes of this Settlement:

15         a.    Deadline for Defendant to provide to Claims Administrator the Class Data:

16             within fifteen (15) calendar days after the entry of an Order granting

17             Preliminary Approval.

18         b.    Deadline for Claims Administrator to mail the Notice Package to Class

19             Members: within thirty (30) calendar days after the entry of an Order

20             granting Preliminary Approval.

21         c.    Deadline for Class Members to postmark objections to the Claims

22             Administrator and serve on Counsel or postmark Requests for Exclusion:

23             within forty-five (45) calendar days after notice of the Settlement is first

24             mailed as part of the Notice Packet.

25         d.    Deadline for Class Members to postmark Claim Forms: within forty-five

26             (45) calendar days after Claims Administrator originally mails the Notice

27             Package.

28         e.    Deadline for Class Counsel to file a Motion for Attorneys' Fees and Costs:

20

1    at least ten (10) calendar days prior to the expiration of the deadline for

2    Class Members to postmark their Claim Forms and/or Objections.

3        f.      Deadline for Class Counsel to file Motion for Final Approval: at least ten

4    (10) calendar days prior to the proposed date for the Final Approval

5    Hearing.

6    5.      Plaintiff's Motion for Final Approval of the Settlement shall be filed with the

7    Court and served on the Parties' Counsel no later than ten (10) calendar days

8    before the Final Approval Hearing.  Plaintiff shall also file a motion for attorneys'

9    fees and costs at least ten (10) calendar days prior to the deadline for the Class

10    Members to object, opt out or submit valid claims.

11    6.      The Final Approval Hearing will be held before this Court on March 19, 2014 at

12    9:30 a.m. in Courtroom 9 at the United States District Court for the Eastern

13    District of California, 2500 Tulare Street, Fresno, CA 93721, to determine all

14    necessary matters concerning the Settlement, including whether the proposed

15    Settlement on the terms and conditions provided for in the Agreement is fair,

16    adequate and reasonable and should be finally approved by the Court; whether a

17    Final Judgment, as provided in the Agreement, should be entered herein; and to

18    formally approve the Class Counsel Fee and Cost Award, the Class

19    Representative's enhancement payment and the Claims Administrator's fees and

20    costs.

IT IS SO ORDERED.

Dated:   **October 30, 2013**

UNITED STATES MAGISTRATE JUDGE

21